ROBERTA L. STEELE, SBN 188198 (CA)
JOHN F. STANLEY, SBN 15418 (WA)
DEBRA A. SMITH, SBN 14786 3 (CA)
LINDA S. ORDONIO DIXON, SBN 172830 (CA)
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
San Francisco District Office
450 Golden Gate Avenue, 5th Floor West
P.O. Box 36025
San Francisco, CA  94102-3661
Telephone No. (415) 522-3070
Fax No. (415) 522-3425
Linda.Ordonio-Dixon@eeoc.gov

*Attorneys for Plaintiff*

STEVEN WERTH, SBN 121153
HANNIBAL P. ODISHO, SBN 266415
Allen, Glaessner, Hazelwood & Werth
180 Montgomery Street, Suite 1200
San Francisco, CA  94104
Telephone No. (415) 697-2000
Fax No. (415) 813-2045
Email: swerth@aghwlaw.com
hodisho@aghawlaw.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>      Plaintiff,<br><br>   vs.<br><br>GOODWILL INDUSTRIES OF THE GREATER EAST BAY, INC., CALIDAD INDUSTRIES, INC.,<br><br>      Defendants. | Case No.:  4:16-CV-07093-YGR<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>CMC Date: March 20, 2017, 2:00 pm |

/ / /

/ / /

Pursuant to the Standing Order for All Judges of the Northern District of California, Plaintiff Equal Employment Opportunity Commission ("Plaintiff") and Defendants Goodwill Industries of the Greater East Bay, Inc. and Calidad Industries Inc. ("Defendants") respectfully submit this Joint Case Management Statement in preparation for the Case Management Conference calendared for March 20, 2017.

**1. JURISDICTION AND SERVICE**

This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. §2000e-5(f)(1) and (3), Section107(a) of the ADA, 42 U.S.C. §12117(a) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Defendants have waived service of the Complaint in accordance with Fed.R.Civ.P. 4 and will file an Answer no later than March 12, 2017.

**2. FACTS**

Plaintiff's Position:

The instant lawsuit alleges claims of sexual harassment, retaliation and constructive discharge under Title VII of the Civil Rights Act of 1964 (Title VII) as well as wage discrimination and unlawful commingling of medical records under the Americans with Disabilities Act (ADA).

Sexual Harassment:  Charging parties, Carla Fuller (Fuller), Stephanie League (League), Ann Burton (Burton) and claimants Lucy Tyson (Tyson) and Crystal Edwards (Edwards) were sexually harassed by Defendants' night shift manager, Warren Ross (Ross) while performing janitorial work at the Oakland Federal Building.  Ross would constantly grope and/or adjust his genitals in the presence of female employees, using movements connoting masturbation.  He used his position of authority to assign women work that allowed him to stare at them while fondling himself. Ross also leered at and commented on the women's bodies and in particular their breasts and buttocks.  He had a habit of touching female employees in an invasive way.  Ross would frequently stand behind female employees and massage their shoulders or backs.  Ross also repeatedly commented on or inquired about female employees' sex lives.  Edwards complained to Defendants' manager Cheryl

Sudduth (Sudduth) regarding the harassment, but no appropriate corrective action or investigation was taken. Later, a new supervisor, Lisa Short (Short), advocated on behalf of the women concerning the harassment. Although Defendants conducted a delayed and flawed investigation, no appropriate corrective action was taken. Ultimately, Ross was removed from the building as the result of a separate investigation made by GSA's Office of the Inspector General.

Retaliation: Charging Parties Lisa Short and Doward Washington were subjected to Retaliation and Short was also constructively discharged. Just two months after her hire by Defendants, Short received several complaints regarding sexual harassment perpetrated by Ross. Short notified the Defendants of the complaints, helped the women memorialize their internal complaints and, after appropriate action was not taken, encouraged them to file charges with the EEOC. On the heels of this protected activity, Short was suddenly subjected to increasingly unreasonable work demands and unfounded criticism of her performance. She was also involuntarily transferred to the nightshift which caused her significant hardship both at work and personally. The unjustified criticism and discipline increased over time. Ultimately, Short was forced to resign. Washington supported the women's claims of sexual harassment by providing corroborating statements during Defendants' delayed investigation of the complaints despite a manager's warning to him that he should not get involved. He also informed management that Ross's offensive behavior "just wasn't right." After engaging in this protected activity, Washington was subjected to increased scrutiny and unjustified discipline.

ADA Wage claims: Defendant employs substantially disabled individuals in a program that provides training in janitorial services. The pay of these workers is set by time studies conducted by Ross. Ross used a "cheat sheet" comprised of fake numbers to set the wages for the disabled employees and Ross himself determined what wages the disabled employees would be given. Ross was aware that the disabled employees would not able to identify, much less protest, his calculations. This practice denied the disabled employees the opportunity to be properly assessed. At least two supervisors were aware of Ross's actions but failed to intervene.

ADA Commingling claim: Defendants admittedly commingled disabled employees' medial information within personnel files in violation of the ADA.

Defendants' Position:

In April, 2012, Phyllis Newells, an apprentice janitor at the Oakland Federal Building advised Lisa Short, a project manager at the Oakland Federal Building, that Warren Ross, a lead janitor at the Oakland Federal Building, had made a sexually harassing comment. Shortly thereafter, Stephanie League, an apprentice janitor at the Oakland Federal Building, reported to Ms. Short that she had allegedly witnessed Mr. Ross "exposing" himself sometime during the previous month.

Ms. Short brought these complaints to the attention of Sheryl Sudduth, Calidad's Director of Contracts and Compliance. Calidad, through Ms. Sudduth, promptly investigated the complaints made by Ms. Newells and Ms. League. On May 11, 2012 Ms. Sudduth met, separately, with Ms. Newells, and Ms. League. On May 17, 2012, Ms. Sudduth met with Mr. Ross as to the allegations of inappropriate conduct.

In late May, 2012, a third apprentice janitor, Carla Fuller, reported to Ms. Short that Mr. Ross had made in appropriate comments to her. Ms. Short subsequently contacted Ms. Sudduth, who met with Ms. Fuller on June 14, 2012. On that same day, Ms. Sudduth again met with Mr. Ross, this time as to Ms. Fuller's allegations.

Ms. Sudduth's investigation was unable to substantiate the accusations made against Mr. Ross. Ms. Sudduth concluded that it was unclear whether the alleged behavior amounted to sexual harassment.

Mr. Ross, who had served as a lead janitor at the Oakland Federal Building since March, 1998, was placed on administrative leave as of July 3, 2012, and remained on administrative leave until a position opened up at Calidad's site in Dublin, California. Mr. Ross applied for that position, was interviewed for that position, and was eventually approved for transfer to that position in August, 2012.

Following Ms. Sudduth's investigation, Ann Burton, another apprentice janitor at the Oakland Federal Building filed a complaint with the EEOC, alleging that Mr. Ross had acted inappropriately towards her, such as by "staring at [her] inappropriately," and by making "inappropriate" comments (such as that Ms. Burton "looked good for her age.")

///

It is the defendant's contention that Mr. Ross' alleged conduct did not create a pervasively hostile work environment. When the allegations of misconduct were brought to Calidad's attention, it promptly investigated the allegations. Mr. Ross was not a "supervisory" employee. Further, defendants exercised reasonable care to prevent and correct inappropriate behavior. To the extent that Mr. Ross' alleged inappropriate behavior occurred, the claimants unreasonably failed to take advantage of the preventative and corrective opportunities made available to them by the defendants.

Defendants did not retaliate against either Ms. Short or Doward Washington, an assistant project manager at the Federal Building in Oakland. A few days after receiving a three month performance review, Ms. Short, who began her employment with defendant Goodwill in March, 2012, filed a charge of discrimination with the EEOC alleging that the performance review was "retaliatory" in nature. Ms. Short voluntarily resigned her employment with defendant Goodwill in October, 2012. Similarly, to the extent that Mr. Washington alleges that any disciplinary action taken against him was retaliatory (and the complaint is vague as to the nature of the alleged retaliatory conduct), any disciplinary action taken was appropriate and non-retaliatory.

With regard to the ADA discrimination claim, the EEOC alleges that Mr. Ross "intentionally and willfully" falsified work measurements to determine the pay rate for Calidad employees. The EEOC's concern appears to focus on Mr. Ross' use of a training guide to calculate wage measurements. In a nutshell, the EEOC alleges that Mr. Ross used numbers from the training guide, rather than numbers based upon the employees' *actual* timed work measurements.

The defendants' procedures to measure employee productivity in order to calculate proportionate pay were in compliance with the Fair Labor Standards Act and 29 C.F.R. Part 525 (authorizing special lower minimum wages for workers with disabilities). To the extent that the calculation of the claimants' rate of pay was incorrect, the error was not "because of" the claimants' disability.

Finally, the EEOC has unreasonably delayed in the prosecution of this action. The EEOC filed the subject complaint for discrimination on December 12, 2016. However, the EEOC began its investigation of the various complaints more than four years earlier in mid-2012. After a year and a half, the EEOC, on or about November 4, 2014, issued a determination that the complaining parties

may have been subjected to unlawful sexual harassment. Thereafter, the EEOC initiated a conciliation process. However, despite the efforts made in early 2015 to address the EEOC's demands for both non-monetary and monetary concessions, the EEOC advised the defendants on June 16, 2015 that no further efforts would be made to reach a conciliation. Thereafter, another 18 months passed before the EEOC proceeded with filing its complaint against defendants Goodwill and Calidad. The EEOC's delay in bringing this action was unreasonable, and has severely prejudiced the defendants ability to defend themselves against the allegations set forth in the complaint.

3.  **LEGAL ISSUES**

    A.  **Sexual Harassment – Title VII**

    Whether Defendants subjected claimants Ann Burton, Fuller, Stephanie League and other similarly situated employees to unwelcome, severe or pervasive conduct on the basis of their sex, female, which created an offensive, abusive, intimidating, and hostile work environment.

    B.  **Retaliation – Title VII**

    Whether Defendants retaliated against claimants Lisa Short and Doward Washington by subjecting them to adverse actions because they engaged in protective activity.

    C.  **Constructive Discharge – Title VII**

    Whether Defendants' alleged retaliatory actions directed at Lisa Short were so oppressive that a reasonable person under the same circumstances would have felt she had no choice but to resign.

    D.  **Disability Discrimination based on wages - ADA**

    Whether Defendants discriminated against disabled employees by fabricating work measurement (time studies) used to set wage rates and thereby subjecting disabled employees to disparate terms and conditions of employment that ultimately resulted in the denial of the opportunity to increase their wages.

    E.  **Commingling of Medical Records - ADA**

    Whether Defendants commingled medical records with non-medical personnel files and thereby failed to keep medical records.

### F.     Violation of Due Process

Whether the EEOC unreasonably delayed in the prosecution of this matter such that defendants were unduly prejudiced such as to justify a dismissal of this action.

### G.     Proceeding on Behalf of "Similarly Situated Employees"

Whether the EEOC apparently identified during the investigation phase all alleged victims for whom it now seeks relief during the litigation phase.  Further, if the EEOC did not specifically identify such victims or investigate these allegations during its present investigation, is the EEOC barred from bringing the present action based on a failure to engage in the good faith conciliation process.

## 4. MOTIONS

Both parties may file discovery motions, if necessary.  The parties may also seek to file motions for summary judgment and/or partial summary judgment on the various claims and/or defenses.  There are currently no pending motions.

## 5. AMENDMENT OF PLEADINGS

The parties do not currently anticipate amending the pleadings to add/dismiss any parties, claims or defenses in this lawsuit.

## 6. EVIDENCE PRESERVATION

The parties have met and conferred regarding Electronically Stored Information as set out in the Court's "Guidelines Relating to the Discovery of Electronically Stored Information."  All parties and their counsel are aware of their duty to preserve evidence that may be relevant to this action and have confirmed that each has taken steps to ensure the preservation of potentially discoverable electronically stored information.

## 7. DISCLOSURES

Initial Disclosures required by Fed. R. Civ. P. 26 will be exchanged no later than March 27, 2017.

## 8. DISCOVERY

A. No Discovery has been taken as of today's date.

B. Scope of Discovery

Plaintiff: Plaintiff EEOC anticipates that the subjects on which discovery may be needed will include, but are not limited to the following:

- Facts relating to alleged sexual harassment
- Complaints of sexual harassment made to Defendants
- Defendants' responses to complaints of sexual harassment
- Defendants' policies and procedures
- Defendants' training and implementation of policies and procedures
- Defendants' wage time studies for apprentices
- Lost wages and benefits
- Injunctive remedies
- The identity of witnesses
- Defendants' asserted factual allegations and defenses
- Facts relating to retaliation against Lisa Short and Doward Washington
- Defendants' personnel and medical record policies, practices and procedures

Defendants:

Defendants anticipate that the subjects on which discovery may be needed will include, but are not limited to the following:

- Facts relating to the alleged sexual harassment;
- Facts relating to the alleged retaliatory conduct;
- Plaintiffs' alleged economic and non-economic damages;
- Plaintiffs' mitigation of damages.

C.  Modifications to Discovery

The parties do not believe modifications to the rules of discovery are needed.  All discovery shall be conducted, served and responded to in accordance with the Federal Rules of Civil Procedure and Local Rules.

D.  E-Discovery

The parties have discussed their positions regarding an agreement to govern the discovery and production of Electronically Stored Information (ESI) and will continue to work in good faith to

come to a mutually agreeable agreement.

### E. Proposed Discovery Plan

The parties agree that discovery should be limited prior to their participation in the mediation process. The parties propose that pre-mediation fact discovery be limited to three (3) depositions and to one round of written discovery. Any depositions taken during pre-mediation fact discovery must be completed.

### F. Anticipated Discovery Disputes

The parties anticipate that discovery requests may necessarily include information such as medical records that should be protected from public disclosure. The parties will work together to prepare and submit a mutually agreeable protective order to the Court.

## 9. CLASS ACTIONS

This case is not a class action.

## 10. RELATED CASES

The parties are aware of no cases related to the instant action.

## 11. RELIEF

The EEOC seeks injunctive relief that will remedy Defendants' discriminatory practices. This would include employee and supervisor training, improved anti-discrimination policies and practices and complaint investigation training for human resources personnel. Defendants' anti-discrimination policies should be revised in order to be accessible to the companies' workforce, particularly those individuals with developmental disabilities. In addition, the EEOC seeks training and monitoring as to Defendants' time study procedures and personnel/medical record-filing policies and practices. With regard to the employees subjected to retaliatory discipline, the EEOC seeks expungement of all disciplinary related documents from their personnel files and a requirement that neutral references be given in response to any inquiries from any prospective employers.

The EEOC also seeks monetary damages on behalf of the charging parties and claimants in this lawsuit. Regarding the sexual harassment claims, the EEOC will seek compensatory and punitive damages on behalf of each sexual harassment victim up to the statutory cap of $300,000.00.

With regard to Lisa Short, who was subjected to retaliation and constructive discharge, the

EEOC seeks compensatory damages up to the statutory cap of $300,000.00 as well as lost wages and benefits.

Similarly, the EEOC seeks compensatory damages on behalf of each of the disabled employees that were subjected to wage discrimination up to the statutory cap as well as lost wages.

Finally, given the Defendants failure to address Ross's discriminatory behavior despite clear notice, the companies' retaliation against managers that sought to advocate for mistreated employees and the deliberate falsification of the wage time studies, there is a clear predicate for punitive damages as to each claimant.

**12. SETTLEMENT AND ADR**

The parties have engaged in informal settlement negotiations. They have chosen to participate in the court's Mediation program and believe that after conducting some limited discovery to inform the parties, the prospect for a successful settlement will increase.  It is the parties' intent to have an early mediation by June, 2017.

**13. CONSENT TO MAGISTRATE JUDGE**

All parties have not consented to have a magistrate conduct all further proceedings including trial and entry of judgment.

**14. OTHER REFERENCES**

Not applicable.

**15. NARROWING OF ISSUES**

The issues cannot be narrowed at this time.

**16. EXPEDITED TRIAL PROCEDURE**

The parties do not believe that this case can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

/ / /

/ / /

**17. SCHEDULING**

The parties propose that early discovery be limited as described above in Section 8E.  Should mediation be unsuccessful, the parties propose the following schedule:

| Event | Date |
|---|---|
| Fact Discovery Cutoff | December 15, 2017 |
| Opening Expert Reports and Disclosures | January 26, 2018 |
| Rebuttal Expert Reports and Disclosures | February 23, 2018 |
| Expert Discovery Cutoff | March 30, 2018 |
| Deadline to File Dispositive Motions | April 27, 2018 |
| Hearing on Dispositive Motions | TBD at Court's convenience |
| Further CMC | TBD at Court's convenience |
| Final Pre-trial Conference and Trial | 90 days after Further CMC |

**18. TRIAL**

The parties anticipate that trial will take approximately 15 to 20 court days, depending on discovery and the issues remaining in the case by time of trial. Plaintiffs have requested a jury trial.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The parties are unaware of any nonparty interested entities or persons requiring disclosure under Civil Local Rule 3-15. Plaintiff is an agency of the United States government. Defendants will file a "Certification of Interested Entities or Persons" on March 16, 2017.

**20. PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**21. OTHER MATTERS**

None known at this time.

| | | |
|---|---|---|
| 1 | Dated:  March 13, 2017 | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
| 2 | | |
| 3 | | By:   /s/Linda S Ordonio Dixon |
| 4 | | LINDA S. ORDONIO DIXON<br>Attorneys for Plaintiff |
| 5 | | |
| 6 | Dated:  March 13, 2017 | ALLEN, GLAESSNER,HAZELWOOD & WERTH, LLP |
| 7 | | By:   /s/ Steven D. Werth |
| 8 | | STEVEN D. WERTH<br>HANNIBAL P. ODISHO<br>Attorneys for Defendants |